Burlington Insurance Co. *v*. Threlkeld.

Opinion delivered May 18, 1895.

*Insurance—Revocation of agency.*

In a suit upon a policy of fire insurance covering household goods, which stipulated that the goods should not be removed, the evidence was that the insurer's local agents gave permission to the insured to remove the goods, and transferred the insurance therewith; that the agents had been in the habit of granting such permission, and had always notified the insurer thereof, upon blanks furnished by the insurer for that purpose, and had never been notified to discontinue the practice until after permission was given in this case. Before the loss

occurred, the authority of the local agents was revoked, but no notice thereof was given to the insured. *Held*, that the insured was justified in presuming that the former authority of the agents continued, and was entitled to recover upon the policy.

Appeal from Garland Circuit Court.

ALEXANDER M. DUFFIE, Judge.

*Clayton & Brizzolara* for appellant.

The agency of Sumpter & Son had been revoked, and their permission did not bind the company. 54 Ark. 78; 50 Ill. 419; 36 Barb. N. Y. 372. The removal of the property without the consent of the company rendered the policy inoperative. 29 N. Y. L. 1013; 10 R. I. 74; 73 Ill. 166; 53 Iowa 236; 1 Wood, Ins. 113, 116; 62 Tex. 461; 7 Am. & Eng. Enc. Law, 1005, note 4; 48 Mo. App. 186. Mere knowledge of the company that the property has been removed does not operate as a waiver. 55 Mich. 273. Persons dealing with an agent are bound to ascertain the extent of his authority. 100 Am. Dec. 78, and note; 62 Mich. 463; 4 Am. St. Rep. 885, and note. The silence of the company was no admission against it. 44 How. 69; 4 Daily, 233; 9 C. & P. 221; 93 N. Y. 567, 571; 67 N. Y. 8; 84 Mo. 13; 55 Ark. 423; 19 S. E. 365. An unauthorized act does not bind one except by affirmative ratification. Mechem, Agency, sec. 160; 69 Ill. 573; Ewell's Evans on Agency, star page 68; 28 Pa. St. 329. The ratification must be with full knowledge of the facts and circumstances. 31 Tex. 77; 68 Am. Dec. 235, and note 237; 59 N. H. 114; 12 Allen (Mass.), 487; Walker's Am. Law, 298.

*Wood & Henderson* for appellee.

As to third parties, the revocation of an agency only takes place when they are informed of it. Story, Agency, (3 ed.) secs. 470, 471-3; 15 N. E. 519; 13 West. 47. Under the facts proved in this case, so far as appellee is concerned, Sumpter & Son were the agents of appel-

lant, and it is bound by their acts.   84 Am. Dec. 714; 1
May on Ins. sec. 70 a; 8 Am. Rep. 556; 23 Pac. 637;
Pars. Cont. (5 ed.) 70, 71; 82 Am. Dec. 631, and note; 13
Wall. 22.   Sumpter & Son were the general agents of
appellant to do all acts connected with this particular
business of insurance at Hot Springs.   Story, Agency
(3 ed.) sec. 17; 13 Wall. 222; 1 May, Ins. sec. 126; 48
Ark. 138; 49 *Id.* 320; 96 Am. Dec. 83.   Parties dealing
with them had a right to rely upon the continuance of
their authority until in some way informed of its revo-
cation.   6 Otto, 84; 2 May, Ins. sec. 70 a; 48 N. Y. 379;
11 Am. & Eng. Enc. Law, sec. 8, p. 331.

BATTLE, J.   This action was brought by R. C.
Threlkeld against the Burlington Insurance Company,
on a policy of insurance against fire, executed by the de-
fendant to the plaintiff.   The property insured was
goods and chattels, such as beds and bedding, and was,
at the time of the issuing of the policy, in a house occu-
pied by the plaintiff, and known as the "Missouri
House;" and by the terms of the policy was to continue
insured on condition it remained in that house, but not
exceeding one year.   After the delivery of the policy on
the 4th of October, 1892, John J. Sumpter & Son, acting
as agents of the defendant, permitted plaintiff to remove
the property to another house in the city of Hot Springs,
described as "the two-story framed shingle roof build-
ing occupied as a private boarding house, situate at No.
316 Ouachita avenue, block 103, street 11," and contin-
ued the insurance of the same in the last mentioned
house by an endorsement or clause in writing attached
to the policy.   It was removed to the latter house, and
while there, on the 6th of January, 1893, was totally
destroyed by fire.   The defendant now denies that it is
liable for the loss, because it says that John J. Sumpter
& Son were not authorized to permit the removal of the
property, or to continue the insurance of the same in any

building other than the "Missouri House." Was the exercise of this authority by them effectual? This is the only question in the case.

The plaintiff recovered a judgment for the full amount of the policy. The defendant filed a motion asking a new trial for the following reasons: "(1) Irregularity in the proceedings of the court, jury and prevailing party; and order of the court and abuse of discretion by which the party was prevented from having a fair trial. (2) Misconduct of the jury and prevailing party. (3) Accident and surprise which ordinary prudence could not have guarded against. (4) Excessive damages appearing to have been given under the influence of prejudice and passion. (5) Error in the assessment of the amount of recovery. (6) The verdict of the jury is not sustained by sufficient evidence, and is contrary to law. (7) Error of law appearing at the time of trial, and excepted to at the time by the defendant."

The reasons given are in language which is almost an exact repetition of so much of section 5839 of Sandel & Hill's Digest as set forth the eight causes, except the seventh, for which a verdict or decision may be vacated and a new trial granted. The alleged errors for which the appellant asks that the judgment of the circuit court be set aside are included in the sixth and seventh grounds of its motion. The seventh is too indefinite for any purpose, and the sixth presents the only question we can properly consider, which is as we have already stated it to be.

The evidence shows that John J. Sumpter & Son were agents of the appellant. The extent of their agency is not proved by direct evidence. Their authority in some particulars is shown by the acts or conduct of the parties. For instance, John J. Sumpter testified that his firm gave permission to remove property insured by the appellant, and transferred the insurance thereof

to the place removed, when asked, and in each case reported what they had done to the appellant, and never received from it "any notification of objection" until the 8th of November, 1892, when they received a letter from the company asking them to discontinue granting such permissions. Erickson testified that he was a book-keeper for John J. Sumpter & Son, and that they, as agents of appellant, granted such permissions, and transferred the insurance on the property to the place removed, and reported the same to appellant on printed blanks furnished by the company to them for that purpose. The testimony of these two witnesses tend to show that John J. Sumpter & Son had exercised this authority for some time, with the knowledge and approval of the appellant. The fact that it furnished the blanks for the report of such action is significant. It clearly implies that the authority was given. In connection with the other evidence, it was sufficient to sustain the verdict of the jury in this respect.

On the 18th of July, 1892, the appellant notified Sumpter & Son in writing that their agency was cancelled, and that it would not accept any more business from them, and to return its policies and their commission, and destroy all other supplies. But it does not appear that appellee ever had any notice of this revocation until after her property was destroyed by fire. She had a right to presume that the former authority still continued, and to act on that presumption until she had notice of its revocation. This much protection was due to her from the insurance company. If it were otherwise, she would lose her property without indemnity, when, if she had been informed, she would have secured herself against loss. As it is, having acted, presumably in good faith, in reliance upon the former authority of Sumpter & Son, without notice of its revocation, she is entitled to recover upon her policy. *Insurance Co.* v.

*McCain*, 96 U. S. 84; *Commercial Union Assurance Co.* v. *State*, 113 Ind. 331; *Tier* v. *Lampson*, 35 Vt. 179; Story on Agency, sec. 470, 471; Parsons on Contracts (8 ed.), bottom pp. 70–71–72.

But Sumpter testified that the revocation on the 18th of July, 1892, did not affect their agency as to policies already issued; and that they continued "to make transfers on policies brought into the office, making transfers of location and making permissions, signing themselves as agents, and reporting these cases to the company up to November." He and Erickson testified that the permission to remove property was granted to Mrs. Threlkeld, and the location of it during insurance was changed in the manner indicated, and that these facts were reported through the mail to the appellant, and nothing was heard from it in reply. The presumption is, if this be true, that the insurance company received the report (*Oregon Steamship Co.* v. *Otis*, 100 N. Y. 451); and its silence under the circumstances was suggestive of approval. To rebut this presumption, Seth Eggleston was introduced as a witness. He testified that he was, on the 4th of October, 1892, and thereafter, grand adjuster and manager of the Burlington Insurance Company; that he was receiving for the company about one hundred letters a day; that he saw all the letters that came to his office; and that the notice of the permission to appellee to remove her property was never brought to the company. How much weight this testimony was entitled to was a question for the jury to decide. But, be this as it may, he does not deny that the company received the reports from Sumpter & Son as to the other permissions to remove property and the continuance of insurance of property in buildings to which it was removed, or contradict the testimony we have stated.

Upon the whole case, we think the evidence was sufficient to sustain the verdict of the jury.

Judgment affirmed.