## HARPER *v.* THURLOW.

### Opinion delivered April 6, 1925.

1. SPECIFIC PERFORMANCE—SUFFICIENCY OF WRITING.—Specific performance of a contract for the sale and purchase of realty will be decreed if the several writings relating to the transaction disclose, without resorting to extrinsic evidence, the parties to the contract, the subject-matter and the terms and conditions of the sale.

2. VENDOR AND PURCHASER—SUFFICIENCY OF DESCRIPTION.—Correspondence between a vendor and purchaser, when read together, *held* to describe the land sufficiently.

3. VENDOR AND PURCHASER—ACCEPTANCE OF OFFER.—Letters between a vendor and purchaser *held* to show an unconditional acceptance of the vendor's offer before its withdrawal.

4. EVIDENCE—PRESUMPTION FROM MAILING LETTER.—Proof that plaintiff mailed a letter to defendant raises a presumption that the addressee received it.

5.  VENDOR AND PURCHASER—ACCEPTANCE OF OFFER—EVIDENCE.—A finding of the trial court that a vendor had not received the purchaser's unconditional letter of acceptance *held* contrary to the preponderance of the testimony.

6.  SPECIFIC PERFORMANCE—PARTIES.—Though one of the plaintiffs was not entitled to a decree of specific performance because he was not a party to the contract sought to be enforced, this will not prevent relief from being granted to the other plaintiff who was a party to the contract.

7.  SPECIFIC PERFORMANCE—INTEREST OF VENDOR'S WIFE.—Though the vendor's wife refused to join in his deed to the purchaser, this will not prevent relief from being granted to the latter where he expressed a willingness to accept a deed without the vendor's wife joining in it.

8.  SPECIFIC PERFORMANCE—SALE OF HOMESTEAD.—The defense that specific performance of a land sale of a homestead cannot be enforced if the wife refuses to join in the deed was waived where such defense was neither pleaded nor proved.

Appeal from Saline Chancery Court; *Jethro P. Henderson,* Chancellor; reversed.

*Saye & Saye,* for appellant.

*J. B. Milham,* for appellee.

HUMPHREYS, J.  This is a suit to obtain specific performance of an alleged contract for the sale and purchase of the E½ of the NW¼ of section 26, township, 1 south, range 14 west, in Saline County, Arkansas. The contract, if made, was entered into by correspondence between one of the appellants, J. C. Harper, and appellee, M. J. Thurlow. M. J. Thurlow owned the land, and, at the time of the correspondence, resided in Toledo, Ohio, and appellee at or near Bryant, Arkansas. The correspondence between the parties constituting the alleged contract is as follows:

"Cleveland, Ohio, Nov. 6, 1922.

"Mr. J. C. Harper, Bryant, Ark.

"Dear sir:  I saw your inquiry regarding the land I own near Bryant.  In answer will say that if you want the place you can have it on the following terms: Price, $2,100, cash or terms.  Would sell same on land contract $500 down, and $160 every six months, giving deed to same when four payments have been made.  That would

give you deed when $1,140 is paid. Would then make mortgage for the balance. In that way you would have five years to pay for same. Will accept 6 per cent. per year as interest on the balance unpaid, paying the interest every six months. In that way it will get less each time. My address is 16 Victoria Apts., 21st and Monroe Streets, Toledo, Ohio.                    "M. J. THURLOW."

"Bryant, Ark., Dec. 21, 1922.

"Mr. M. J. Thurlow,

"Dear sir: In reply to your letter of Nov. 6 in regard to your land at Bryant, will say that I think you are a little high in your price. Other land is only bringing $20 per acre. All 'round here realty is a good bit off to what it was, as well as all other things in country. Let me hear just what is the best you will do on the terms you mentioned in your letter, and I will see what I can do.

"Yours truly,

"J. C. HARPER."

"Little Rock, Ark., Feb. 7, 1923.

"Mr. M. J. Thurlow,

"341 West Del. Ave., Toledo, Ohio.

"Dear sir: I have found a purchaser for your land, who has turned over to me $10 to bind the trade, and he asked me to have you send an abstract so that he can examine the title. He understands that, in accordance with your letter of November 6, 1922, the price of the land is to be $2,100, to be paid as follows: $500 cash and $160 every six months thereafter until paid in full, the deferred payments to bear interest at the rate of 6 per cent. per annum. He further understands that you will give him a deed when he has paid in $1,100 altogether. Please prepare deed and send it with draft attached to some bank in Little Rock, with instructions as to when to deliver the deed. It is my understanding that the land is as follows: East one-half (E½) northwest quarter (NW¼), section twenty-six, township one (1) south of range fourteen (14) west.

"Yours very truly,

"J. C. HARPER."

"Toledo, Ohio, Feb. 15, 1923.

"Mr. J. C. Harper, Bryant, Ark.

"Dear sir: I am in receipt of your letter of recent date, stating you had found a buyer for me, but you did not state who the buyer was. You also state that you have accepted a deposit from the prospective buyer to bind the bargain. I was under the impression that you were the one who wanted the land, and presumed that, in all probability, you wanted to make a farm of the place on which to raise crops. However, that part would not make any difference to me. The terms I made for you last November were to sell to you on a contract, the deed to be signed and sent to you when you had paid $1,100. That means just the same as depositing the deed in a bank, for you would have your contract recorded, and that contract would call for a deed when the $1,100 is paid. It would be necessary for me to know who the prospective buyer is in order to make the proper contract, as his name would be entered thereon and signed by he and his wife (if married). The abstract would go forward to the England Loan Company of Little Rock, as that is the only bank I know there. It would be necessary to give them a receipt for same. I will do nothing further until I hear from you again. Yours truly,

"M. J. THURLOW,
"341 W. Delaware, Toledo, Ohio."

"Feb. 26, 1923.

"Mr. M. J. Thurlow, Toledo, Ohio.

"Dear sir: Your letter of the 15th instant rec'd, and in reply will say that I will buy the land on the terms you mention, of $500 cash and $160 every six months, with interest at six per cent., until the $2,100 is paid, you to deliver deed to me when four payments have been made, or when you have rec'd $1,140. You can make contract to J. C. Harper (single), and send all papers to the England National Bank at Little Rock, and if, upon examination by my attorney, are found to be O. K., contract will be signed and the $500 paid at once.

"Yours truly,
"J. C. HARPER."

"Bryant, Ark., 5-19-23.

"Mr. M. J. Thurlow,

"Dear sir: On Feb. 26, 1923, I sent you a letter accepting your offer on your land at Bryant, and have not had any reply from you. I would like to hear from you by return mail, what you intend to do, as I am still waiting on you for a reply. Would thank you very much if you would let me know.

"Yours truly,
"J. C. HARPER,
"Address Bryant."

"Toledo, Ohio, May 26, 1923.

"Mr. J. C. Harper,

"Bryant, Ark.

"Dear sir: Just received your letter, and in answer would say that I was under the impression that I answered your last letter long ago, telling you that I was unable to complete the deal, as another party has made a better offer, and Mrs. Thurlow was not willing to attach her signature to the proposition I made to you.

"Yours truly,
"M. J. THURLOW."

After the institution of the suit a settlement was attempted through correspondence, but, as it was not effected, it is unnecessary to incorporate the letters which passed between the parties and lawyers relative thereto. It appears in the correspondence relative to the settlement that J. A. Shipton, the other appellant, was interested in the purchase of the land with J. C. Harper.

The trial court dismissed appellant's bill for the want of equity, from which decree an appeal has been duly prosecuted to this court.

Appellants contend for a reversal of the decree upon the ground that the letters contained every necessary element and essential of a contract for the sale and purchase of real estate. Appellee contends, however, that the letters did not contain several necessary elements of

an enforceable contract for the sale and purchase of land, viz., that the letters did not sufficiently describe the land and did not show an unconditional acceptance of the offer made by appellee.

The rule is that specific performance of a contract for the sale and purchase of real estate will be decreed if the several writings relating to the transaction disclose, without resorting to extrinsic evidence, the parties to the contract, the subject-matter, and the terms and conditions of the sale. *St. L. I. M. & S. R. Co.* v. *Beidler,* 45 Ark. 1.

The letters, when read in aid of each other, sufficiently describe the land. The letter of November 6, 1922, refers to the land owned by appellee near Bryant. The letter of December 21, 1922, refers to it in the same way. The letter of February 7, 1923, described the land by government calls, and the subsequent letters did not indicate that the land was incorrectly described. The description of the land was certain and specific.

The letters also show an unconditional acceptance of the offer before it was withdrawn. Appellee suggests that Harper's reply on December 21, 1922, to Thurlow's offer on November 6, 1922, was a rejection of the offer, but we do not so interpret it. It was an attempt on his part to get a better proposition, but was not a refusal to accept the offer. Harper's next letter, of date February 7, 1923, and Thurlow's answer thereto, of date February 15, 1923, clearly show that neither one of them treated Harper's letter of December 21, 1922, as a termination of the offer, but, on the contrary, as a continuation thereof. In saying that the letters show an unconditional acceptance of the offer, we are not unmindful that appellee testified that he had not received Harper's letter of acceptance dated February 26, 1923. The letter referred to is an unequivocal acceptance of the offer, and we think the learned trial court erred in finding that the letter was not received by appellee. J. C. Harper testified that he mailed the letter to Thurlow, and produced a carbon copy thereof. This raised a presumption that appellee

received it. Appellee did not deny receiving such a letter in his reply to Harper's letter of date May 19, 1923. Harper wrote him on that date that he had written and accepted his offer on February 26, 1923, to which Thurlow responded on May 26, 1923, that he was under the impression that he had answered his (appellant's) last letter long ago. The effect of this response was to admit that he had received the letter accepting his offer, which he had answered long ago, and in which he had told said appellant he could not carry out the deal because another party had offered him more, and Mrs. Thurlow was not willing to carry out the original offer. As stated before, he did not deny receiving the acceptance, or contend that Harper had failed to accept the offer within a reasonable time, but put his refusal to carry out his proposition on the ground that, in the meantime, he had received a better offer.

The finding of the trial court to the effect that the offer was not accepted was contrary to the weight of the evidence.

The suggestion of appellee that J. A. Shipton was not a party to the contract, and for that reason not entitled to a decree for specific performance, cannot prevent J. C. Harper, under the general prayer of the bill and the testimony in the case, from obtaining specific performance of the contract appellee made with him.

Neither can the suggestion of appellee, to the effect that the record does not reflect what interest Mrs. Thurlow has in the land, prevent relief being granted to Harper under his contract. The letters reveal that appellee owned the land, and appellant, J. C. Harper, has expressed a willingness to accept a specific performance of the contract without his wife joining in the execution of the deed therefor. The record reflects that appellee was residing in Toledo, Ohio, and, if he ever impressed a homestead right on the land and had not abandoned it, it was incumbent on him to interpose this as a defense, and not upon appellant to allege and prove that it was not his homestead.

On account of the error indicated the decree is reversed, and the cause remanded with directions to the trial court to enter a decree for specific performance of the contract.