(No. 6068.   December 18, 1933.)

AMERICAN SURETY COMPANY OF NEW YORK, a
Corporation, Appellant, v. JESSIE M. BLAKE, Execu-
trix, and JAMES BRUCE BLAKE, Executor of the
Last Will and Testament of JAMES W. BLAKE, De-
ceased, Respondents.

[27 Pac. (2d) 972.]

(1)

Guy W. Wolfe, for Appellant.

A. H. Oversmith and Leo McCarty, for Respondents.

WERNETTE, J.—April 22, 1915, the appellant, American Surety Company, became surety upon a depository bond to the state of Idaho for the Fidelity State Bank of Orofino. In executing said bond the appellant required an indemnity agreement, which was executed by James W. Blake and P. H. Blake, then stockholders, and president and cashier, respectively, of the Fidelity State Bank of Orofino, wherein they agreed to indemnify and save the surety harmless from loss under the bond. The bank became insolvent, April 8, 1921, and the appellant under the terms of its bond paid the state $1,291.40, as its share of the loss of state deposits, which amount it is now seeking to recover.

Previously this case was before the court and is reported in 45 Ida. 159, 261 Pac. 239. In the former opinion it was determined that as to the indemnitor, P. H. Blake, then deceased, his estate was not liable under the indemnity agreement because the action was barred by the statute of limitations, with reference to the time of filing claims against

decedent's estate. As to the indemnitor, James W. Blake, then living, the case was sent back for a new trial. Prior to the second trial James W. Blake died and the executor and executrix of his estate, respondents herein, were substituted as parties.

The respondents made the defense that on April 8, 1921, when the bank became insolvent, the indemnity agreement was no longer in force, and had not been since May 1, 1918. This defense was based on a letter, admitted in evidence, dated May 1, 1918, written by James W. Blake, addressed to "American Surety Company, Salt Lake City, Utah," which letter stated, "this letter will be notice to cancel any and all responsibilities in connection with the said bond, or any other bond in connection of the Fidelity State Bank," etc. Appellant denied ever having received said letter.

The case was tried to a jury, and a verdict was returned for respondents; thereafter appellant filed a motion for new trial, which motion was denied. The appellant prosecutes this appeal from the judgment and the order denying the motion for new trial.

This case having previously been before this court on appeal, all questions of law therein decided must stand as the law in this case.

Appellant has set forth numerous assignments of error, but it appears to us that but five essential propositions need be considered for a correct determination of the issues raised: First, is this an equity case so that it should have been tried before the court instead of a jury? Second, is the evidence sufficient on the part of the respondents, with reference to the notice of a termination of liability on the part of the indemnitors, to raise a question of fact to be submitted to the jury, or should the court have held as a matter of law that the notice was insufficient? Third, was error committed in permitting respondents' exhibit number one to be admitted in evidence? Fourth, did the court err in permitting defendants and respondents to open the cause by presenting respondents' evidence first to the jury and to close the trial with rebuttal testimony? Fifth, did the court

err in not permitting appellant to prove certain facts by the testimony of Eugene A. Cox?

These propositions will be considered in their order. Appellant seriously contends that this is an action in specific performance for the recovery of a loss under a contract of general indemnity wherein the indemnitors agreed to "at all times indemnify and save the surety harmless," etc., and that therefore the cause rests entirely within the jurisdiction of equity and should have been tried by the court instead of to a jury.

Appellant, prior to the trial, demanded and made a motion to the effect that the case be tried before the court, which, however, was refused. Very respectable authority is cited by appellant in support of its position. We believe the rule stated by appellant is sound and should be followed wherever the facts show that equitable features are involved, calling for the interposition of equity. But where the facts and circumstances do not reveal particular equitable considerations, then it will be held that appellant has an adequate remedy at law, for which reason equity will refuse to interfere. It was so held in *White v. Fratt,* 13 Cal. 521, cited with approval in the case of *Josephian v. Lion,* 66 Cal. App. 650, 227 Pac. 204. The latter case being cited by appellant in support of its contention. In said case the court pointed out the particular equitable features involved, distinguishing the same from *White v. Fratt,* indicating that if the facts were not such especially calling for the interposition of equity because of the peculiar circumstances the court would have considered it as a law case.

In the instant case there are no peculiar equitable features. If respondents are liable at all, the damages resulting to the appellant by reason of the breach of the indemnity agreement are certain, namely, the amount that appellant paid to the state, $1,291.40, with interest. In other words, it is an action to recover a specific sum of money claimed. The action was not brought for the reformation, re-execution or the cancelation, rescission or discharge of any instrument, which would call for equitable jurisdiction. That an action

at law will lie for a breach of a contract of indemnity seems to be recognized by the author of Ruling Case Law, wherein it is said:

"According to some authorities a contract to indemnify can be specifically enforced in equity *before there has been any such breach of the contract as would sustain an action at law,* on the equitable principle that a person indemnified against loss, is not obliged to wait until he has suffered, and perhaps been ruined, before having recourse to judicial aid." (14 R. C. L. 58.)

We hold the court did not err in submitting the case to the jury.

The second contention of appellant, above stated, is to the effect, as to whether the evidence on the part of the respondent, with reference to termination of liability on the part of the indemnitors was sufficient to raise a question of fact for the jury, or should have been held insufficient as a matter of law by the court. On the former appeal of this case to this court, it was definitely held that the indemnitors to the surety company could, by notice, absolve themselves from liability, after a reasonable time in which the surety could secure its own release from obligation to the state, this court saying:

"It is true that the notice of the indemnitors to the surety company was sufficient to absolve them from further liability accruing after a reasonable time within which the surety could secure its own release, if it chose, by giving notice of withdrawal under C. S., sec. 314. (*Gay v. Ward,* 67 Conn. 147, 34 Atl. 1025, 32 L. R. A. 818; *Furst v. Buss,* 104 Kan. 245, 178 Pac. 411; 31 C. J., p. 429, sec. 23; 2 Black on Rescission and Cancellation, p. 875; Spencer on Suretyship, sec. 103.)"

On petition for rehearing this court held on the question of mailing of the letter tending to relieve respondents of liability, that upon a new trial the mailing and receipt of the letter was to be an open question; that it was not to be understood as holding that the introduction of the letter

without objection, with the only evidence offered as to its mailing, was conclusive evidence of its receipt.

Evidence of respondents was to the effect that on May 1, 1918, James W. Blake sent the following letter to the American Surety Company, Salt Lake City, Utah:

"Gentlemen:

"In going over the files of the Fidelity State Bank of this place, I find the Bank is using your bond No. 0550743 of your company.

"P. H. Blake and myself were indemnifiers on this bond while we were interested in the bank, and if you are still holding us as indemnifiers, this letter will be a notice to cancel any and all responsibilities in connection with the said bond, or any other bond in connection of the Fidelity State Bank; since his estate and myself haven't any further interest in the bank.

"Respectfully yours,

"J. W. BLAKE."

There was positive testimony by Jessie M. Blake that she wrote the letter for James W. Blake; that he signed the same and that it was placed in a stamped envelope addressed to the "American Surety Company, Salt Lake City, Utah," with the return address on the outside of the envelope; that the same was deposited in the United States postoffice at Orofino, Idaho, and that the letter was never returned. On the other hand the company officials who had charge of the branch office of appellant at Salt Lake during this time, who handled and had charge of the correspondence of appellant at such office, testified positively that said letter was never received by the company at Salt Lake.

Appellant takes the position that the presumption of the receipt of a letter properly mailed and addressed is overcome by positive evidence that it was not received, citing the cases of *Ault v. Interstate Savings & Loan Assn.*, 15 Wash. 627, 47 Pac. 13, *Gibson v. Rouse*, 81 Wash. 102, 142 Pac. 464, and *Conklin v. Shaw*, 67 Colo. 169, 185 Pac. 661, which fully support appellant's position. We believe, however, that the

weight of authority and better reasoned cases hold to the contrary. In the case of *Fleming & Ayerst Co. v. Evans,* 9 Kan. App. 858, 61 Pac. 503, the Kansas court used this language:

"Upon the question as to whether or no the positive testimony of the party addressed, that he did not receive the letter, is sufficient to overcome the presumption that the letter was in fact received, we find a conflict of opinion. The supreme court of Washington has held that such presumption is overcome by direct testimony of the person to whom the letter is sent that it was not received (*Ault v. Association,* 115 Wash. 627, 47 Pac. 13), while the supreme court of Alabama has held that it is for the jury to determine whether the presumption is overcome by such evidence. (*Steiner v. Ellis,* (Ala.) 7 So. 803.) We are inclined to favor the rule laid down in the Alabama case, as being the better one."

It is to be noted that while in the early Washington cases that court strongly adhered to the position claimed for by appellant, in later decisions it relaxed from its former holdings and held that it was a question for the jury, in harmony with the case of *Fleming & Ayerst Co. v. Evans, supra.* In the case of *J. & H. Goodwin Co. v. Schwaegler,* 147 Wash. 547, 266 Pac. 177, the Washington court held as follows:

"This (referring to a previous letter) was followed by three or four other letters of like tenor, and respondent denied receiving any of these letters demanding payment or showing any indebtedness due. Appellant requested an instruction to the effect that, where a letter is properly addressed and mailed, it is presumed to have been received.

"In view of the positive testimony of appellant to the writing of this and other letters, their proper addressing, and mailing, and the denial of their receipt by respondent, such an instruction should have been given."

In the case of *Kubey v. Travelers Protective Assn.,* 109 Wash. 453, 187 Pac. 335, plaintiff and respondent testified that he had written a letter giving notice of his accident to defendant and appellant. In his testimony he detailed cir-

cumstances and conditions under which the letter was written; that it was properly addressed and mailed, and in his testimony he was corroborated by other members of his family. On cross-examination, however, he admitted that but two letters were written and mailed to the defendant company. Two letters from respondent were produced by the appellant, neither of which was with reference to the notice in question. A witness for the appellant also positively testified that the letter in question had not been received. In deciding the issue the Washington court used this language:

"Whatever the court may think as to the weight of the testimony, there was substantial evidence that the letter was written and mailed within a week after the accident, *and the question does not become one of law for the court.* The legal presumption is that the letter reached the addressee, and it was for the jury to determine from all the evidence whether it was received by the appellant." (Italics ours.)

See, also, *Rosenthal v. Walker*, 111 U. S. 185, 4 Sup. Ct. 382, 28 L. ed. 395; 1 Wigmore on Evidence, 2d ed., p. 329, sec. 95.

Appellant claims, however, that the letter was not properly addressed, in that the correct name of appellant is American Surety Company of New York, and the proper address, Boston Building, Salt Lake City, Utah, while the evidence discloses that the name and address as placed on the envelope was, "American Surety Company, Salt Lake City, Utah." There is no merit in such contention. It is a matter of common knowledge that the American Surety Company of New York is commonly known by and spoken of as the American Surety Company. It is a large institution, well and commonly known and doing business in practically every section of the country. It had an established office in Salt Lake City for quite a number of years, with quite a staff of employees working in its office, and undoubtedly received large quantities of mail daily. Salt Lake City, by way of comparison, is not a large city, and it would be exceedingly technical to hold that a letter ad-

dressed as shown by the evidence of respondents in this case was not properly addressed. It must also be kept in mind that it was positively testified to that a return address was on the envelope, and the letter was not returned. We reach the conclusion that the question as to whether or not the letter was written, properly addressed, mailed and received by the addressee was a proper question to be submitted to the jury. The jury finding in favor of respondents there is ample evidence to support such finding, and there is nothing in the decision of this court in *Matlock v. Citizens Nat. Bank,* 43 Ida. 214, 250 Pac. 648, 50 A. L. R. 1418, that is not in harmony with this holding.

Appellant next contends that the court erred in allowing respondents' exhibit number one to be introduced in evidence. There is no merit in such complaint. This case had been previously tried in the district court and it appears from the record that the appellant, at the first trial, introduced positive evidence that the letter, respondents' exhibit number one, had not been received by the company, as was also the evidence in the second trial before the district court. The testimony of the witnesses for the company, as to the fact that the letter had not been received, was taken by depositions so that it was known definitely before the actual trial that appellant was claiming it had never received the letter. The law never requires a useless thing. No good could have resulted in making a demand on appellant to produce the original when it was definitely known that the position taken by appellant was that it had never received the letter and, consequently, could not produce it. In any event the evidence of respondents was to the effect that respondents' exhibit number one was a carbon impression of the letter written on a typewriter, made with the same stroke of the keys, the original of which was mailed to appellant and never returned. In the case of *Martin & Lanier Paint Co. v. Daniels,* 27 Ga. App. 302, 108 S. E. 246, the second paragraph of the syllabus reads:

"Duplicate or carbon copies of letters made by the same pencil at the same time are not 'copies,' but duplicate

originals, and could be introduced in evidence without notice to produce."

In the case of *Prescott, Wright, Snider Co. v. City of Cherryvale,* 134 Kan. 53, 4 Pac. (2d) 457, the court uses this language:

"The carbon impression of the letter written on a typewriter made with the same stroke of the keys as was done here may be treated as original, and hence either may be received as primary evidence."

And in the case of *Bartholomae Oil Corp. v. Oregon Oil & Development Co.,* 106 Cal. App. 57, 288 Pac. 814, 817, the court says:

"In the present case the evidence is sufficient to show that a demand was duly made. Mr. Bartholomae testified in behalf of the plaintiff that he sent a statement of this demand for payment to the defendant. The production of this original demand was then requested of the defendant in open court during the trial. Upon denial that it had been received, the witness then produced a carbon copy thereof and testified that he mailed the original to the defendant July 12, 1924, by depositing it in the United States mail properly addressed, with the postage prepaid. The carbon copy was then received in evidence over the objection of the defendant. This constituted ample evidence of a demand. The defendant's denial that he received this demand through the mail merely created a conflict of evidence in that regard."

The duplicate original in this case was properly identified and properly admitted, and under the circumstances of this case is not violative of sections 16–403 and 16–411, Idaho Code Annotated.

Appellant next complains that it was not given the right to open and close its case. We find no merit in appellant's contention. The record discloses that after the jury was impaneled and sworn, and before either of the parties attempted to introduce any evidence, respondents, through their attorney, admitted in open court, before the jury, all of the allegations of appellant's complaint, leaving

only one question of fact to be determined, namely: Did James W. Blake mail, and did appellant receive, the notice (respondents' exhibit number one) on the part of James W. Blake and P. H. Blake of the termination of the indemnifying agreement? Which question of fact was set forth as an affirmative defense on the part of respondents. Had no further evidence been introduced after the admissions of respondents, appellant would have been entitled to a directed verdict. The burden of proof as to the mailing of the notice and the receipt by appellant was upon respondents. There was no particular occasion why appellant should introduce any further testimony after the admissions made by respondents until respondents were heard from, as to this one issue of fact remaining, and it was perfectly proper for the trial judge to hold, under such circumstances, that the respondents be first required to introduce their proof relating to this one question of fact, remaining to be passed on by the jury. After respondents introduced their testimony appellant was given ample opportunity to introduce whatever evidence it had regarding this matter, and given the opportunity to open and close the argument. Section 7–206, I. C. A., is not mandatory that in every instance the plaintiff be given the right to open and close. That portion of the section applicable reads as follows:

"When the jury has been sworn, the trial must proceed in the following order *unless the judge for special reasons otherwise directs:*

"1. The plaintiff, after stating the issue and his case, must produce the evidence on his part.

"2. The defendant may then open his defense and offer his evidence in support thereof.

"3. The parties may then respectively offer rebutting evidence only unless the court, for good reasons, in furtherance of justice, permits them to offer evidence upon their original case. . . . . " (Italics ours.)

In this case, as heretofore pointed out, there were special reasons why the court should require the respondents first to introduce their evidence, and so holding is not in conflict with

the opinion of this court in the case of *Harrison v. Russell & Co.*, 17 Ida. 196, 105 Pac. 48, where the court found that the plaintiff had the burden of proving an issue of fact which had not been admitted, and therefore correctly held that plaintiff should have the right to open and close. In that case the court used this language:

"Then follows the provision with reference to rebutting evidence and the argument of counsel. Under this statute it is the right of the plaintiff in all cases to have the opening and the close, unless there be some peculiar fact or reason why this right should be denied the plaintiff; and upon such reason the judge directs such procedure.

"There does not appear under the issues of this case any reason why the plaintiffs should be denied this statutory right. The complaint contained affirmative allegations which were denied by the answer, and which it was incumbent upon the plaintiffs to prove in order to recover."

Thereby recognizing the rule that under certain circumstances for special reasons the trial court has the right to change the order of proof.

We now come to the last proposition necessary to be considered. Did the court err in excluding certain testimony of Eugene A. Cox? We believe that the record is sufficient to show that Mr. Cox, as attorney, represented James W. Blake, and was speaking for and on his behalf, by and through his correspondence with appellant. We have carefully examined the proffered testimony of Mr. Cox, including his correspondence with appellant, to determine if it contained anything of sufficient material character so that the court should have admitted it. We find nothing, however, in anything Mr. Cox wrote appellant which could seriously be considered a declaration against interest on the part of James W. Blake, or which was inconsistent or contradictory to the position taken by respondents on the trial. We feel that by reason of such facts his testimony was not sufficiently material to cause prejudicial error in excluding it.

Appellant has set forth a number of additional assignments of error. While appellant states in its brief that these are not waived, they were not discussed in the oral argument or the printed brief. We have carefully considered the same and found none of sufficient importance as affecting the material rights of the parties to justify further discussion here.

Finding no prejudicial error in the record, the judgment and order overruling the motion for a new trial are affirmed.

Costs to respondents.

Budge, C. J., and Givens and Holden, JJ., concur.

MORGAN, J., Concurring.—I concur in the conclusion reached, but regret the adoption, in this state, of the rule that a so-called carbon copy of a writing may be admitted in evidence without demand made to produce the original, on the theory that it is a "duplicate original," because: (1) Generally, it is not executed and, therefore, is neither a copy nor a duplicate original; (2) it, occasionally, furnishes such attorneys as are willing to do so, opportunity to take their adversaries unawares and thus defeat the ends of justice.